UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



FILED
JUL 3 1 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JEFFREY CHARLES HUAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | 01-C-1442-S |
| DUDLEY, HOPTON-JONES, SIMS ) | |
| & FREEMAN, PLLP CPA, ) | |
| ) | |
| Defendant. ) | |

ENTERED
AUG 1 2002

## MEMORANDUM OPINION ON PENDING MOTIONS

Pending before the Court are 1) Defendant's Motion to Compel Arbitration, 2) Plaintiff's Motion to Compel Discovery Responses, 3) Defendant's Motion for Summary Judgement, 4) Plaintiff's Motion to Continue Defendant's Motion for Summary Judgement, 5) Plaintiff's Motion to Compel Depositions, and 6) Plaintiff's Motion to Extend Discovery (Doc. 45). This Memorandum speaks to the pending motions.

### I. FACTUAL BACKGROUND

Plaintiff Jeffrey Charles Hual is a thirty-two year old white male. He was employed by Defendant Dudley, Hopton-Jones, Sims & Freeman, PLLP CPA ("Defendant) accounting firm at the time of the events giving rise to this litigation. On three separate occasions, Plaintiff, a "Principal" at the firm, reported incidents of sexual harassment to his supervisor, Jack Knight. The three alleged victims of the harassment were female members of

47

Plaintiff's staff. The alleged "harasser" is Stewart Dudley, the Managing Partner of the firm. In June, 1999, Plaintiff expressed concern to Knight about the potential exposure of the firm to liability on account of this ongoing sexual harassment.

In March, 2000, Plaintiff was called into Stewart Dudley's office. Dudley told Plaintiff that he could either resign or be fired. Dudley provided Plaintiff no reason for the ultimatum. Plaintiff refused to resign, and was subsequently terminated. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 31, 2000. On March 8, 2001, Plaintiff received his right to sue letter. This case was filed in June 2001.

Plaintiff has voluntarily dismissed Count I of his Amended Complaint, which alleged gender discrimination. Plaintiff therefore has two remaining claims: (1) retaliatory discharge under Title VII, and (2) a breach of contract claim under state law.

## II. THE MOTION TO COMPEL ARBITRATION

In its Motion to Compel Arbitration, Defendant argues that Plaintiff's third claim, breach of contract, must be arbitrated rather than litigated.

Plaintiff's original Complaint, filed in June, 2001, included two Counts: Count I was for gender discrimination under Title VII, and Count II was for retaliation in violation of Title VII. On December, 2001, Plaintiff moved for Leave to Amend his Complaint. The motion was granted, and Plaintiff filed his Amended Complaint on January 2, 2002. (Doc. 17). Defendant filed the motion to compel arbitration on March 4, 2002.

Plaintiff concedes that his contract claim would otherwise be subject to

arbitration, but he contends that Defendant waived its right to compel arbitration by participating in this litigation up to this point. Only two months elapsed between the Plaintiff's amendment adding the contract claim and Defendant's filing the motion to arbitrate. The standard for assessing waiver is whether the defendant "participated in the litigation to a point inconsistent with its intent to arbitrate" and that the "participation resulted in prejudice" to Plaintiff. Morewitz v. West of England, 62 F.3d 1356, 1366 (11th Cir. 1995).

Clearly, Defendant's participation in this since the filing of the Amended Complaint is not inconsistent with its intent to arbitrate. And Plaintiff does not allege that Defendant's participation in the intervening two months has resulted in prejudice to him. Rather, he asks the Court to infer prejudice - which the Court cannot do.

In view of the strong presumption favoring arbitration, and Plaintiff's unequivocal agreement to arbitrate disputes arising under the contract, Defendant's Motion to Compel Arbitration is due to be granted.

### III. THE MOTION TO COMPEL DISCOVERY RESPONSES

Plaintiff has moved the Court to compel Defendant to answer certain interrogatories and to produce certain documents. After reviewing each of the interrogatories and requests for production and Defendant's stated grounds for failing to answer/produce, the Court finds that Interrogatory #3 should be answered and the documents sought by Requests for Production #5, 6, 12, 14, 16, 17, 23 and 24 should be produced.

However, since Interrogatories #9 and 10 and Requests for Production #21 and 26 relate only to the claim to be arbitrated, i.e., the contract claim, Plaintiff's Motion is due to

be denied with respect to those items.

In sum, Plaintiff's Motion to Compel Discovery Responses, (Doc. 27), is due to be granted in part and denied in part.

### IV. THE MOTION FOR SUMMARY JUDGMENT AND THE MOTION TO CONTINUE IT

Since discovery has not been completed, Plaintiff's Motion to Continue Defendant's Summary Judgment Motion is due to be granted. Necessarily, the time for responding to the Motion for Summary Judgment will likewise be extended.

### V. THE MOTION TO COMPEL DEPOSITIONS

Plaintiff has moved the Court to compel depositions of Stewart Dudley, ostensibly the decision-maker for purposes of this case, and Ray Dudley, Defendant's 30(b)(6) representative.

Under all the circumstances, the motion is due to be granted. Defendant argues that the depositions should not be compelled because they are irrelevant on the issues raised by its Motion For Summary Judgment. That may well turn out to be the case. But Plaintiff is entitled to reasonably discover the evidence relating to the claim in his case. The depositions of these two employees of Defendant are obviously relevant to Plaintiff's claim; they are equally relevant to the defenses interposed by Defendant in its summary judgment motion.

### VI. PLAINTIFF'S MOTION TO EXTEND THE DISCOVERY DEADLINE

In light of incomplete discovery, the motion to extend the discovery deadline is due to be granted.

These conclusions will be embodied in s separate order.

Done this __31st__ day of July, 2002.

_____
Chief United States District Judge
U.W. Clemon